FILED

DEC 16 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   ID-11-1175-MkDJu |
| MAC R. MAYER AND DIANNE H. MAYER, | Bk. No.   10-02238 |
| Debtors. | |
| BAUER & FRENCH, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE; JEREMY J. GUGINO, Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted by Video Conference
on November 17, 2011

Filed – December 16, 2011

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Terry L. Myers, Chief Bankruptcy Judge, Presiding

Appearances:   Randal Jay French, Esq. of Bauer & French appeared on behalf of Appellant Bauer & French; no Appellee filed a brief or appeared at oral argument.

Before:   MARKELL, DUNN and JURY, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Randal J. French[1] appeals the bankruptcy court's order authorizing his employment ("Employment Order") as counsel for former chapter 11[2] debtors Mac and Diane Mayer. French also appeals the bankruptcy court's order denying his motion to alter or amend the Employment Order and the order granting in part French's final application for professional compensation for services he rendered while serving as chapter 11 counsel for the debtors ("Compensation Order"). Because French's appeal does not present a live case or controversy, we must DISMISS it as moot.

**FACTS**

On July 14, 2010, the Mayers (with French's assistance) commenced their chapter 11 bankruptcy case, and French filed an employment application pursuant to § 327 ("Employment Application"). In the Employment Application and in the accompanying disclosures and affidavits, French disclosed that he had received funds from the Mayers two days before the bankruptcy filing. In relevant part, the funds received included a payment of $7,500, which French stated he already had applied "as a

---

[1]While the notice of appeal identified "Bauer & French" as the appellant, two of the three orders on appeal refer to "Randal J. French" as "Counsel" for purposes of the order, and the third order generically refers to "Counsel" without identifying to whom it was referring. We need not decide this issue because any distinction between Randal J. French and Bauer & French is not material to the resolution of this appeal. For the sake of convenience, we use the term "French" as the appellant throughout this Memorandum.

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

minimum fee for my services in this chapter 11." Affidavit of Proposed Attorney and Disclosure of Compensation (July 14, 2010) at ¶ 6. In subsequent filings, French shed more light on the $7,500 minimum fee. According to French, he and the Mayers had agreed that the $7,500 ("Retainer") was a non-refundable advance payment for services to be rendered in the chapter 11, and that French could credit services performed both before and after the Mayers' bankruptcy filing against the Retainer.

At the first hearing on the Employment Application, the court raised a number of concerns, one of which was the nature of the Retainer. In particular, the court expressed concern that the Retainer might not be subject to review under § 330, and thus could not be approved for that reason.

After a series of additional disclosures and continued hearings at which the nature of the Retainer was further discussed, the court ruled that it would not authorize the Retainer as French had proposed. According to the court, the Retainer as proposed was neither an advance payment retainer (which should be a flat fee for the services to be performed and remains subject to review under § 329) nor a security retainer (which remains property of the estate, and which only can be drawn upon to the extent compensation has been awarded and authorized for payment pursuant to §§ 330 and 331). Ultimately, the court concluded that the Retainer looked more like a security retainer and should be treated as a security retainer. It further concluded that the $7,500 should be held in trust pending the issuance of orders approving compensation under either § 330 or § 331. On January 24, 2011, roughly six months after the

3

filing of the Employment Application, the court entered its Employment Order, which granted the Employment Application, except it provided that the Retainer would be treated as a security retainer and that the $7,500 would be held in trust "pending orders entered under § 331 or § 330." Shortly thereafter, on February 3, 2011, the court granted the U.S. Trustee's motion to convert the case from chapter 11 to chapter 7.

French then filed a motion to alter or amend the Employment Order. The target of that motion was the court's treatment of the Retainer. Specifically, French argued that the court erred by treating the Retainer as a security retainer and by directing that the $7,500 must be held in trust. The only relief French sought in the motion was the alteration of the treatment of the Retainer to what he originally had proposed.

Around the same time, French also filed his first and final application for compensation as counsel for the chapter 11 debtors ("Fee Application"). In the Fee Application, French represented that he previously had drawn against the Retainer for prepetition chapter 11-related services in the amount $1,642.50. He further represented that he had incurred $21,270.00 in fees for postpetition services, and he sought the court's approval of this entire amount and a court order authorizing the chapter 7 trustee to pay from the estate $15,412.50. According to French, the first $5,857.50 in postpetition fees already had been "paid" by his exhausting the remaining balance of the Retainer. French's Fee Application did not seek approval of his crediting of prepetition and postpetition fees against the Retainer. In

4

essence, the Fee Application was premised on French's concept of the Retainer as he originally had proposed it to the court, rather than on the treatment of the Retainer provided for in the Employment Order.

The court denied the motion to amend, but the court granted in part the Fee Application. When the court orally ruled on the Fee Application, the court noted that its prior Employment Order did not account for the fact that French already had applied the Retainer to pay prepetition and postpetition fees, French apparently taking on faith that the court ultimately would accept his view of the Retainer (which it did not). After recounting what the court had intended in treating the Retainer as a security retainer, the court orally modified its prior employment order to only require $5,857.50 to be held in trust (deducting the $1,642.50 applied to pay prepetition fees). The court then allowed $19,312.50 in fees (of the total $21,270.00 sought) and authorized the exhaustion of the balance of the retainer (even though French had not asked for such authorization and already had applied the remainder of the retainer to his postpetition fees), thereby leaving a balance owed for fees of $13,455.00, to be paid if or when the chapter 7 trustee determined that the estate had sufficient funds to pay the balance.

French appealed the Employment Order, the Compensation Order and the order denying the motion to alter or amend the Employment Order.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction below.

5

**ISSUES**

1. Did French have standing?

2. Is this appeal moot?

**STANDARD OF REVIEW**

Standing and mootness are jurisdictional questions that we review de novo. See Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 873 (9th Cir. 2011); Siskiyou Reg'l Educ. Project v. U.S. Forest Serv., 565 F.3d 545, 559 (9th Cir. 2009).

**DISCUSSION**

We have a duty to sua sponte consider justiciability issues like standing and mootness. American Civil Liberties Union of Nevada v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006); see also In re Palmdale Hills Prop., LLC, 654 F.3d at 873 (stating that "standing is a necessary component of subject matter jurisdiction.").

Constitutional standing and mootness issues arise from Article III of the United States Constitution, which requires a live case or controversy before judicial power can be exercised. Id.; Lomax, 471 F.3d at 1015; Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008) (citing DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)).

A party has Article III standing if he or she can show: "(1) injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision." Lomax, 471 F.3d at 1015 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); see also Camreta v. Greene, 131 S.Ct. 2020, 2028 (2011); Veal v. Am. Home Mortg. Servicing, Inc. (In re

6

Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011). Article III standing is measured based on circumstances as they existed at the time the action was commenced. Lomax, 471 F.3d at 1015; Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001).[3]

French appears to have met the requirements for Article III standing. French had a concrete and particularized stake in the resolution of his Employment Application. Absent court approval, French would not have been eligible for an award of compensation under § 330. See 11 U.S.C. 330(a). Nor do we doubt that the court's action on the Employment Application "injured" French for

---

[3]The minimum standing requirements arising from Article III of the Constitution are distinct from the prudential standing concerns that we also need to consider even if the minimum standards are satisfied. See, e.g., In re Palmdale Hills Prop., LLC, 654 F.3d at 873-74; In re Veal, 450 B.R. at 906 (finding constitutional standing but then examining one aspect of prudential standing – whether the movant was pursuing its own legal rights rather than pursuing rights belonging to others). The prudential standing concern most relevant here is whether French had standing to appeal the bankruptcy court's orders. Bankruptcy appellate standing is narrower than Article III standing, in that it requires the appellant to show that he or she has been "directly and adversely affected pecuniarily" by the order(s) on appeal. See In re Palmdale Hills Prop., LLC, 654 F.3d at 874. In light of our ultimate ruling here based on Article III mootness grounds, we do not reach any prudential standing or mootness issues. However, for essentially the same reasons that we find this appeal constitutionally moot, we arguably could have found that French lacked standing to appeal the bankruptcy court's orders. But see id. (stating that the Ninth Circuit Court of Appeals generally does not invoke the prudential doctrine of bankruptcy appellate standing when the appellant is the same party who sought relief in the bankruptcy court leading to the order appealed); Sherman v. SEC (In re Sherman), 491 F.3d 948, 957 n.8 (9th Cir. 2007) (same).

7

purposes of Article III standing.[4]  By requiring French to hold the Retainer in trust (instead of accepting French's immediate exhaustion of the entire retainer), the trust funds would become property of the estate under § 541 and would be subject to the potential restrictions and infirmities associated with property of the estate under the Bankruptcy Code.  See, e.g., 11 U.S.C. §§ 363, 542.  In addition, once the court ordered the Retainer to be treated as a security retainer, French could not legally exhaust the retainer to pay postpetition fees absent a court order pursuant to § 330 or § 331.  Finally, if the court had ruled entirely in French's favor, the Retainer immediately would have been considered fully exhausted and would not have been subject to the limitations associated with property of the estate.  Thus, the above-referenced circumstances establish that French had Article III standing.

Having concluded that French had Article III standing, we next must consider whether this matter became moot.  Whereas an Article III standing issue calls into question whether a live case or controversy existed at the time the action was commenced, an Article III mootness issue focuses on whether subsequent events have deprived the dispute of its "live" character.  Lomax, 471 F.3d at 1015.  In this sense, "[m]ootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the

---

[4]In bankruptcy cases, either a defendant's actions or the court's actions can be the source of the injury for purposes of establishing Article III standing.  See In re Palmdale Hills Prop., LLC, 654 F.3d at 873 n.4 (citing In re Sherman,491 F.3d at 965).

commencement of the litigation (standing) must continue throughout its existence (mootness)." Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999)(internal quotations and citation omitted).

A dispute can lose its live character when a party ceases to have a legally cognizable interest, in other words an actual stake, in its outcome. City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 282-83 (2001). In this context, "legally cognizable interest" means essentially the same thing as "injury in fact," which is the term typically used when examining standing issues. Clark, 259 F.3d at 1011 n.7.

Here, French lost any legally cognizable interest in the outcome of this matter when the court entered the Compensation Order. The Compensation Order approved (after the fact) French's exhaustion of the Retainer. Thus, upon the entry of the Compensation Order, the legal characterization of the nature of the Retainer ceased to have any continuing significance to French's rights or duties. By way of this appeal, French only seeks to have the bankruptcy court's prior rulings and orders modified concerning the nature of the Retainer. According to French, the court's characterization of the Retainer as a security retainer should be deleted, and instead the Retainer should be validated as an advance payment retainer as French had proposed. However, as indicated above, the Retainer no longer exists; French has exhausted it with the bankruptcy court's blessing. The Compensation Order is a final order that no one but French has appealed. Consequently, regardless of whether we were to grant the relief that French seeks on appeal, French's

9

rights in the funds that he received from the Retainer would not change.[5]

French claimed at oral argument that he is concerned that the chapter 7 trustee at some future time may seek disgorgement of the Retainer funds. But French could not identify any legal theory that would support such action by the trustee, nor are we aware of any. To the contrary, we have held that prepetition security retainers are not subject to disgorgement for the purpose of facilitating equality of distribution among creditors under § 726(b). See Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.), 339 B.R. 730, 739 (9th Cir. BAP 2006). Moreover, any attempt by the trustee to seek disgorgement of such funds from French likely would amount to an impermissible collateral attack on the bankruptcy court's Employment Order and its Compensation Order.

We further note that the issue raised in French's appeal does not fall within the exception to the mootness doctrine for injuries capable of repetition but evading review. "The 'capable of repetition, yet evading review' exception applies when (1) the challenged action is too short in duration to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will again be subject to the same action." Lomax, 471 F.3d at 1017 (citing First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774, (1978)); see also

---

[5]French has not argued, either on appeal or in the bankruptcy court, that the ruling he challenges has had or might have collateral consequences concerning the potential violation of state ethics or professional responsibility rules.

10

Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (applying the same standards and holding that circumstances demonstrated an absence of an expectation that the plaintiff subsequently would be subjected to the same challenged action).

French has pending two subsequent appeals, both arising in unrelated bankruptcy cases, in which French raises essentially the same issue. See In re Danner, BAP No. ID-11-1315, and In re Ridgerunner, LLC, BAP No. ID-11-1316.[6] Danner and Ridgerunner demonstrate that the court action French challenges is capable of repetition. However, they also tend to demonstrate that the challenged court action will not evade review. The procedural posture of Danner and Ridgerunner is significantly different from what we have here. In each, the court outright denied French's employment application based on French having included an advance payment retainer as one of the terms of employment – the same type of advance payment retainer French proposed herein.

Having not been approved for employment under § 327 in either Danner or Ridgerunner, French cannot be awarded professional compensation under either § 330 or § 331, so the issue on appeal in Danner and Ridgerunner cannot be mooted out as it was here by a subsequent professional compensation order.

Accordingly, we conclude that this appeal is moot and should be dismissed.

---

[6]We can and hereby do take judicial notice of the filing and contents of French's opening briefs filed in Danner and Ridgerunner. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003)(citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)).

**CONCLUSION**

For all of the reasons set forth above, this appeal is DISMISSED as moot.