FILED

NOT FOR PUBLICATION

APR 05 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP Nos.   EC-11-1341-MkPaD |
| | ) | EC-11-1432-MkPaD |
| KIRELL FRANCIS TAYLOR, | ) | (Consolidated) |
| | ) | |
| Debtor. | ) | Bk. No.   11-14192 |
| _____ | ) | |
| | ) | |
| KIRELL FRANCIS TAYLOR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| UNITED STATES TRUSTEE; JEFFREY | ) | |
| M. VETTER, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Submitted Without Oral Argument
on March 22, 2012

Filed - April 5, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances:   Appellant Kirell Francis Taylor, pro se on brief;
no appearance by either Appellee.

Before: MARKELL, PAPPAS and DUNN, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtor Kirell Taylor ("Taylor") appeals from the bankruptcy court's denial of his motion asking the bankruptcy court (1) to initiate proceedings to enable Taylor to renounce his United States citizenship, (2) to declare him a "stateless person" and an "alien" and (3) to declare that California's courts and penal system have no authority to continue to incarcerate him. Taylor also appeals from the bankruptcy court's dismissal of his bankruptcy case based on Taylor's failure to appear at his § 341(a)[1] meeting of creditors. We AFFIRM.

**FACTS**

According to Taylor, he is a convicted felon serving a life sentence, without possibility of parole, in the California Department of Corrections ("CDC") facility located in Tehachapi, California. Taylor apparently desires to renounce his United States citizenship, to leave the country, and to establish his own sovereign nation, the Kingdom of Kirell, on an islet off the coast of Dubai.

Taylor commenced his chapter 7 bankruptcy case in April 2011, and Jeffrey Vetter was appointed to serve as chapter 7 trustee ("Trustee").[2]

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2]Taylor filed an involuntary chapter 7 bankruptcy petition against himself, which the bankruptcy court treated as a voluntary chapter 7 petition under § 301(a). Because Taylor has not complied with Rule 8009(b) and 9th Cir. BAP R. 8009(b)-1 and
(continued...)

Shortly thereafter, on May 19, 2011, Taylor filed a motion ("First Release Motion") seeking to be released from prison so that he could appear for examination at the initial meeting of creditors to be held in accordance with § 341(a). Taylor did not attach any proof of service to the First Release Motion or otherwise indicate in the motion that he had served the motion on anyone. The one-page motion requested the court to order that Taylor be delivered into the custody of the United States Marshals Service ("USMS"), so that the USMS could transport him to the § 341(a) meeting of creditors scheduled for June 3, 2011.

The bankruptcy court denied the First Release Motion without a hearing in an order and memorandum entered on May 26, 2011. As the court put it, it had no authority over the CDC and could not order the CDC to release Taylor, temporarily or otherwise, because the CDC was neither a party to the bankruptcy case nor had it been served. The court suggested that Taylor contact the Trustee directly, with a request to appear by telephone for his examination at the § 341(a) meeting of creditors.

On June 6, 2011, the Trustee filed a motion to dismiss Taylor's bankruptcy case because Taylor did not appear for examination at his § 341(a) meeting of creditors. In response,

---

[2](...continued)
provided us with any excerpts of the record, we have relied upon what information we could obtain by reviewing the items on the bankruptcy court's automated bankruptcy case docket in Taylor's bankruptcy case. We may take judicial notice of the contents and filing of these items. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003) (citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)).

3

Taylor filed an opposition to the dismissal motion. In his opposition, Taylor merely stated that he was going to file a new motion to be released from prison for the continued § 341(a) meeting of creditors (tentatively set for July 15, 2011, but subject to the outcome of the Trustee's dismissal motion).

On June 15, 2011, Taylor filed a motion entitled: "Ex Parte Motion to Initiate Right of Expatriation and for the Court to Issue Interlocutory Orders" ("Expatriation Motion"). In his Expatriation Motion, Taylor asked the court for a hearing and ultimately for a judgment providing the following injunctive and declaratory relief:

1. declaring Taylor to be "expatriated," based on Taylor's stated intent to renounce his United States citizenship;

2. declaring Taylor to be a "stateless person" and an "alien";

3. acknowledging Taylor's fundamental religious right to be his own sovereign;

4. acknowledging Taylor's entitlement to enforce any privileges and immunities afforded to aliens under the United States Constitution;

5. declaring the United States, and all state and local governments within the United States, to have no jurisdiction over Taylor as a citizen, but only as an alien and only to the extent he is indicted for violating state or federal law;

6. requiring the United States or various agencies thereof to issue a form or notice declaring that Taylor had effectively renounced his United States citizenship;

7. directing the United States or various agencies thereof

4

to take custody of Taylor and ultimately to deport him, with Taylor's consent; and

8. declaring the prior state court criminal proceedings against Taylor closed "for lack of Jurisdiction over the debtor as an alien."

Expatriation Motion (June 15, 2011) at pp. 3-5. According to Taylor, the court had jurisdiction and authority to grant him the relief requested under 8 U.S.C. § 1481(a)(6), and 28 U.S.C. §§ 451, 1651, 2201 and 2256.

Five days later, on June 21, 2011, the bankruptcy court denied Taylor's Expatriation Motion without a hearing based on a lack of jurisdiction. Taylor timely filed a notice of appeal of the order denying his Expatriation Motion ("First Notice of Appeal").

On June 27, 2011, Taylor filed a new motion seeking to be released from prison, this time so that he could attend the continued § 341(a) meeting of creditors tentatively set for July 15, 2011 ("Second Release Motion"). The First Release Motion and the Second Release Motion (jointly, "Release Motions") are virtually identical, except that Taylor attached to the Second Release Motion a proof of service indicating that he had served the Trustee, the United States Trustee, and the USMS. On June 29, 2011, the bankruptcy denied the Second Release Motion. That order is similar to the order denying the First Release Motion, except that the court the second time around noted the upcoming July 14, 2011 hearing on the Trustee's dismissal motion and indicated that Taylor and the Trustee might be able to discuss at the July 14, 2011 hearing alternate arrangements for

Taylor to telephonically appear at the continued July 15, 2011 meeting of creditors.

But Taylor did not appear, telephonically or otherwise, at the July 14, 2011 hearing on the Trustee's dismissal motion. Nor did Taylor submit to the bankruptcy court anything indicating what steps (if any) he had taken to attempt to appear telephonically at the June 3, 2011 initial § 341(a) meeting of creditors, at the July 14, 2011 hearing on the Trustee's dismissal motion, or at the July 15, 2011 continued § 341(a) meeting of creditors. The bankruptcy court granted the Trustee's dismissal motion by minute order entered on July 15, 2011,[3] and Taylor filed a notice of appeal from the dismissal order ("Second Notice Of Appeal").[4]

**JURISDICTION**

We have jurisdiction over Taylor's appeals pursuant to 28 U.S.C. § 158. The bankruptcy court had jurisdiction over the Trustee's dismissal motion pursuant to 28 U.S.C. §§ 1334 and

---

[3]The court's dismissal order does not contain a statement of the grounds the court relied on in granting the dismissal motion, but rather references the "findings of fact and/or conclusions of law . . . stated orally on the record." Taylor has not provided us with the transcript from the July 14, 2011 hearing containing the court's oral findings and conclusions.

[4]The bankruptcy case docket indicates that the bankruptcy court did not receive Taylor's Second Notice of Appeal until August 9, 2011, after the fourteen-day deadline for filing an appeal from the dismissal order. See Rule 8002(a). However, on September 16, 2011, a motions panel of this Panel issued an order deeming the Second Notice Of Appeal timely filed on July 26, 2011, pursuant to the "prison mailbox rule," citing Houston v. Lack, 487 U.S. 266 (1988). We hereby adopt the motions panel's timeliness ruling.

6

157(b)(2)(A), and we discuss below whether the bankruptcy court had jurisdiction over Taylor's Expatriation Motion.

**ISSUES**

1.  Did the bankruptcy court have subject matter jurisdiction over the Expatriation Motion?

2.  Did the bankruptcy court abuse its discretion when it dismissed Taylor's bankruptcy case because he failed to appear at his § 341(a) meeting of creditors?

**STANDARDS OF REVIEW**

We review de novo issues concerning the bankruptcy court's jurisdiction.  See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 769 n.5 (9th Cir. 2008); Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 423 (9th Cir. BAP 2011).

The bankruptcy court's dismissal of a chapter 7 case "for cause" is reviewed for abuse of discretion.  Sherman v. SEC (In re Sherman), 491 F.3d 948, 969-70 (9th Cir. 2007).  Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested."  United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).  And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  Id. (internal quotation marks omitted).

7

**DISCUSSION**

**A. The bankruptcy court correctly determined that it lacked jurisdiction over Taylor's Expatriation Motion.**

The scope of the bankruptcy court's jurisdiction is set by statute; the bankruptcy court only may hear or determine a matter to the extent that matter falls within the boundaries of the bankruptcy court's jurisdiction as set forth in 28 U.S.C. §§ 1334(b), 157(a), and 157(b). In re Wilshire Courtyard, 459 B.R. at 424. Pursuant to these statutes, in order for the bankruptcy court to have jurisdiction over a matter, it must arise under title 11, arise in a case under title 11, or be related to a case under title 11. Id. A matter "arises under" title 11 if it invokes a right to relief created by title 11. Id. In turn, even though a matter may not arise under title 11, it still "arises in a case under title 11" when it is an "administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum . . . ." Id. at 425. Finally, the broadest category of bankruptcy jurisdiction is "related to" jurisdiction, which merely requires the matter to have some relationship to and/or impact on the bankruptcy case. See Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 868-69 (9th Cir. 2005) ("A bankruptcy court's 'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'") (quoting Mann v. Alexander Dawson (In re Mann), 907 F.2d 923, 926 n.4 (9th Cir. 1990)).

But the key to all three aspects of bankruptcy court jurisdiction is the need to discern a connection between the

8

matter in question and the bankruptcy. When there is no material connection, there cannot be any bankruptcy court jurisdiction. See Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1131-35 (9th Cir. 2010).

Taylor claims that the bankruptcy court erroneously concluded that it lacked jurisdiction over his Expatriation Motion. According to Taylor, bankruptcy courts have broad authority to issue writs of habeas corpus and grant declaratory and other relief regardless of the subject matter of the underlying proceeding. But Taylor simply is mistaken. As explained above, a bankruptcy court's jurisdiction is limited by statute to those matters having the requisite connection to the bankruptcy case. See 28 U.S.C. §§ 1334(b), 157(a), and 157(b). Here, Taylor has not pointed us to any connection between his bankruptcy case and his Expatriation Motion, nor do we perceive any. The Expatriation Motion only concerned Taylor's expressed desires (1) to renounce his citizenship, (2) to end his incarceration as a convicted felon, (3) to leave the country, and (4) to reconfigure his relationship with state and federal governments to fit his personal conception of the rights and duties of an "alien" and a "stateless person" vis-à-vis those government entities. Simply put, none of the relief sought in the Expatriation Motion was connected in any way to Taylor's bankruptcy case. Accordingly, the bankruptcy court did not err when it denied the Expatriation Motion for lack of jurisdiction.

**B. The bankruptcy court did not abuse its discretion when it dismissed Taylor's bankruptcy case based on his failure to appear at his § 341(a) meeting of creditors.**

We reiterate that the standard of review of a bankruptcy

9

court's dismissal of a chapter 7 case "for cause" is whether the court abused its discretion. <u>Sherman v. SEC (In re Sherman)</u>, 491 F.3d 948, 969-70 (9th Cir. 2007). As a threshold matter, however, we note that Taylor never obtained the transcript of the July 14, 2011 hearing, at which the bankruptcy court orally stated on the record its findings of fact and conclusions of law in support of its decision to dismiss Taylor's bankruptcy case. As appellant, Taylor was required to obtain that transcript to facilitate our review. <u>See</u> Rule 8009(b)(5); 9th Cir. BAP R. 8006-1; <u>McCarthy v. Prince (In re McCarthy)</u>, 230 B.R. 414, 417 (9th Cir. BAP 1999).

Without the July 14, 2011 hearing transcript, it is at best difficult (if not impossible) for us properly to determine whether the bankruptcy court abused its discretion in dismissing Taylor's bankruptcy case. Thus, Taylor's failure to obtain the transcript is sufficient by itself to justify our dismissal of his appeal from the dismissal order. <u>See</u> <u>Syncom Capital Corp. v. Wade</u>, 924 F.2d 167, 169 (9th Cir. 1991) (dismissing appeal based on appellant's failure to provide necessary transcripts); <u>see also</u> <u>Jones v. City of Santa Monica</u>, 382 F.3d 1052, 1057 (9th Cir. 2004) (dismissing portion of appeal dependent on hearing transcripts not provided).[5]

_____

[5]Although the governing procedural rules make it clear that Taylor was required to obtain the July 14, 2011 hearing transcript, on December 27, 2011, the BAP Clerk's Office took the extra step of issuing a Clerk's Order re Transcript, which directed Taylor to "take all steps necessary to have the transcript of the July 14, 2011 hearing prepared by the court reporter and filed with the BAP . . . ." In response to the

(continued...)

10

Nonetheless, given Taylor's incarceration, we will exercise our discretion to conduct whatever review we can in light of the thin record available. However, in doing so, Taylor's failure to provide the July 14, 2011 hearing transcript works against his appeal in two ways. First, "we are entitled to presume that the appellant does not regard the [bankruptcy] court's findings of fact and conclusions of law as helpful to his appeal." In re McCarthy, 230 B.R. at 417 (citing Gionis v. Wayne (In re Gionis), 170 B.R. 675, 680-81 (9th Cir. BAP 1994), aff'd mem., 92 F.3d 1192 (9th Cir. 1996)). And second, "we look for any plausible basis upon which the bankruptcy court might have exercised its discretion to do what it did. If we find any such basis, then we must affirm." Id.

As best we can tell from the record provided, the bankruptcy court granted the Trustee's motion to dismiss based on the grounds stated in the motion, because Taylor did not, as required under § 343, appear for examination at his § 341(a) meeting of creditors. When a debtor does not comply with his or her duty under § 343 to appear for examination, the bankruptcy court may dismiss his or her bankruptcy case. See § 707(a); 3 Collier on Bankruptcy ¶¶ 343.02[2], 343.09[1](Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2011).

---

[5](...continued) December 27, 2011 Clerk's Order, Taylor merely filed in the bankruptcy court a "Request For Production of Reporter's Transcript" which by itself was insufficient to obtain the required transcript. See Rule 8006; Hearing Transcript Request Procedures (Bankr. E.D. Cal. 2012), available at, http://www.caeb.uscourts.gov/documents/Forms/ Misc/transcript_requests.pdf (last modified Feb. 22, 2012).

Under § 707(a), the bankruptcy court may dismiss a bankruptcy case "for cause."  That section provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including–
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> >
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

Congress meant the types of cause described in § 707(a) to be illustrative and not exhaustive.  See Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1191 (9th Cir. 2000), partially superseded by statute on other grounds, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23; Dinova v. Harris (In re Dinova), 212 B.R. 437, 442 (2d Cir. BAP 1997) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 94 (1978)).  In order to determine whether particular conduct should constitute cause for dismissal under § 707(a), we apply a two-part test:

> If the asserted "cause" is contemplated by a specific Code provision, then it does not constitute "cause" under § 707(a). . . .  If, however, the asserted "cause" is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for "cause" for [dismissal] under § 707(a).

Sherman v. SEC (In re Sherman), 491 F.3d at 970 (citing In re Padilla, 222 F.3d at 1193-94).

12

Here, Taylor's noncompliance with § 343 satisfies both elements of Sherman's two-part test.  First, no other Bankruptcy Code section provides a remedy for debtor's non-appearance at the § 341(a) meeting of creditors.  And second, because § 343's requirements are sufficiently similar in nature and importance to the particularized procedural requirements enforced by § 707(a)(2) and (3), we hold that it is appropriate also to apply § 707(a) to debtors who do not comply with their duties under § 343.

In his appeal brief, Taylor claims for the first time that he attempted to make arrangements both with prison officials and with the Trustee to appear telephonically at the § 341(a) meeting of creditors, but that both the prison officials and the Trustee ignored his requests.  However, we have reviewed all of Taylor's bankruptcy court submissions, and nowhere in them did he ever argue that he had made such efforts.  Nor did he present any evidence to that effect to the bankruptcy court.  We cannot consider facts that were not before the bankruptcy court.  See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("[E]vidence that was not before the lower court will not generally be considered on appeal."); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988) (papers not filed or admitted into evidence by the trial court prior to judgment on appeal were not part of the record on appeal and thus were stricken).  As stated by the Ninth Circuit in Kirschner, "'We are here concerned only with the record before the trial judge when his decision was made.'"  Kirschner, 842 F.2d at 1077 (quoting United States v. Walker, 601 F.2d 1051, 1055 (9th Cir.1979)).

13

Consequently, we cannot and will not consider Taylor's belated and unsubstantiated claims regarding his alleged efforts to arrange for a telephonic appearance.

Taylor also argues that the bankruptcy court should have excused his nonappearance at his § 341(a) meeting of creditors because the court wrongly denied his two Release Motions. According to Taylor, the court had the authority to direct the CDC to release him from prison so that he could attend the meeting of creditors.

But Taylor's arguments lack merit. Taylor never served either of his Release Motions on the CDC, even though the CDC has custody over Taylor as an inmate in California's prison system, and even though his Release Motions sought to require the CDC to release Taylor into the custody of the USMS. There was thus no jurisdiction over the CDC, and thus no power to consider the questions Taylor raises about the bankruptcy court's power to compel the CDC to release him to the custody of the USMS.

Moreover, at the time the court granted the Trustee's motion to dismiss Taylor's bankruptcy case, there was absolutely nothing in the record indicating that Taylor had taken any steps seeking to appear telephonically at the meeting of creditors. Nor did Taylor oppose the motion to dismiss by stating that he needed more time or any court process to facilitate his making arrangements to appear telephonically. Rather, he merely stated in his opposition to the motion to dismiss that he would file his Second Release Motion, even though the court already had denied his First Release Motion. We thus cannot say, on this record, that the bankruptcy court abused its discretion in dismissing

14

Taylor's bankruptcy case based on his failure to appear at his § 341(a) meeting of creditors.  <u>Hinkson</u>, 585 F.3d at 1262; <u>see also</u> <u>Yadidi v. Herzlich (In re Yadidi)</u>, 274 B.R. 843, 847-48 (9th Cir. BAP 2002) (stating that bankruptcy court's application of its equitable powers under § 105 is reviewed for abuse of discretion).

**CONCLUSION**

For all of the reasons set forth above, we AFFIRM the bankruptcy court's orders.