## COMMISSIONER OF INTERNAL REVENUE v. PAGE OIL CO.

### No. 194.

Circuit Court of Appeals, Second Circuit.
July 27, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Edward H. Hammond, Sp. Assts. to Atty. Gen., for petitioner.

James P. Quigley, of Olean, N. Y., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This controversy as to the correct amount of the respondent's income taxes for the year 1934 and of its income and excess profits taxes for the years 1935 and 1936 has grown out of the Commissioner's disallowance of deductions from gross income taken by the respondent in its returns for those years for interest accrued. The deductions were taken under § 23 (b) of the Revenue Act of 1934 and the corresponding section of the 1936 Act, 26 U.S. C.A. Int.Rev.Code, § 23(b), permitting the deduction from gross income in the computation of net income, with exceptions not here relevant, of "All interest paid or accrued within the taxable year on indebtedness, * * *." The Board, reversing the Commissioner, allowed the deductions and the correctness of its action in so doing is the sole issue.

The respondent is a Pennsylvania corporation producing oil and gas in what is called the Bradford Oil Field in that state. It was organized by men interested in oil and gas producing lands near Bradford and Kane, Penn., on April 30, 1930, and during the following month its board of directors accepted an offer made by its organizers to convey to it valuable oil and gas producing lands in exchange for all of its capital stock, 1,600 shares; $16,000 in cash; its note for $161,650 due on demand with interest; and its subordinate note for $2,000,000 payable on demand, on or after five years from date with interest at the rate of six per centum; or instead of one subordinate note, notes of like tenor aggregating $2,000,000.

The offer was accepted and the land was duly conveyed to the respondent. Instead of one "subordinate" note, four, each of the face amount of $500,000, were given by the respondent in partial payment for the land. Each contained this provision: "This note is given in payment of a part of the purchase price of oil and.gas premises and is subordinate in payment to a series of notes aggregating Three Hundred Four Thousand Two Hundred Seventy Six Dollars Forty Cents ($304,276.40) made by this company this date, payable 30 days after demand, to the order of J. P. Quigley and Frances F. Hatch; and it is likewise subordinate in payment to any notes which may be made by this company for the purpose of paying the cost of improving and developing of any oil or gas property owned by it." The payees of these four notes

also agreed with the respondent that the notes would bear no interest until 1934 and it was understood also that they would be subordinated to payments on a mortgage on the property purchased and to the payment of the operating expenses of the respondent. The deductions disallowed by the Commissioner were taken for interest accrued on these subordinate notes beginning in 1934, and the disallowance was on the ground that the subordinate notes were not given for an "indebtedness" within the meaning of that word as used in the above-mentioned section. The respondent kept its books and filed its returns on the accrual basis in the taxable years here involved.

■ The Commissioner's position is, in short, that what was deducted as accrued interest on these notes was not interest on indebtedness because the payment of the notes was made subordinate to the payment of future claims of general creditors both for operating expenses and the development of the respondent's oil and gas property so that its only obligation was to pay out of "surplus profits, earnings, or assets" and reliance is put upon Kentucky River Coal Corporation v. Lucas, D. C., 51 F.2d 586. The Board did not agree that this was the only obligation of the respondent on the notes and neither can we. They were, on the contrary, payable on demand in any of the three taxable years, regardless of surplus income or profits, out of any assets not applicable first to the satisfaction of indebtedness entitled to priority in payment. In Commissioner of Internal Revenue v. O. P. P. Holding Corp., 2 Cir., 76 F.2d 11, 12, we had occasion to deal with a similar situation involving subordinated debenture bonds instead of notes. We then said: "We do not think it fatal to the debenture holder's status as 'a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The final

criterion between creditor and shareholder we believe to be the contingency of payment." This is likewise applicable in the present instance, and directly supports the redetermination of the Board based upon its decision that the amount due on the notes is a debt of the respondent.

■ A secondary position of the Commissioner is that the notes were not given in furtherance of the business purposes of the respondent and that in the light of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and, perhaps, Griffiths v. Helvering, Commissioner, 308 U.S. 355, 60 S. Ct. 277, 84 L.Ed. 319, they are to be disregarded for tax purposes as sham.

The facts as found by the Board give that theory no support. That these notes were given for perfectly sound business reasons was amply shown and the evidence before the Board well supported the following quotation from its opinion: "Under ordinary circumstances, that notes in this large amount have not been paid either as to principal or interest would probably cast some reflection upon the bona fides of their issuance. However, the record contradicts any such reflection. At the time of the acquisition of the Ralph property and the issuance of these notes, oil from that field was selling at $4.30 per barrel. A drop in the market was not anticipated. However, after that time the price of oil from the Bradford field fell to $2 per barrel. If the higher price had been maintained, the oil actually produced during the period intervening between the time when these notes were issued and the date of the hearing herein would have brought gross receipts of more than $6,000,000. Such income was reasonably to have been anticipated when the notes were issued and, if actually received, not only interest on the notes could have been met, but a substantial reduction of their principal could have been effected." [41 B.T.A. 952, 962.]

Affirmed.