FILED

APR 05 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1194-PaDKl |
| | ) |
| JAMES C. GIANULIAS; | ) Bankr. No. 08-13150-CB |
| CAMEO HOMES, | ) (substantively consolidated |
| | ) with No. 08-13151-CB) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| VRE ACCEPTANCE, LLC; VIRTUAL | ) |
| REALITY ENTERPRISES, LLC, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| THOMAS SEAMAN, Trustee of the | ) |
| Creditors Trust for the Reorganized | ) |
| Debtors James C. Gianulias and | ) |
| Cameo Homes, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on February 22, 2013,
at Pasadena, California

Filed - April 5, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:     Bergeron H. Pierre of Squire Sanders (US) LLP
                 argued for appellants VRE Acceptance, LLC and
                 Virtual Reality Enterprises, LLC; Elissa D. Miller
                 of SulmeyerKupetz, APC argued for appellee Thomas
                 Seaman.

_____

[1]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

-1-

Before: PAPPAS, DUNN and KLEIN,[2] Bankruptcy Judges.

Memorandum by Judge Pappas
Concurrence by Judge Klein

Creditors VRE Acceptance, LLC ("VREA") and Virtual Realty Enterprises, LLC ("Virtual") appeal the order of the bankruptcy court denying their "Motion for Determination That Their Claims Were Properly Filed."  We REVERSE.

**FACTS**

James C. Gianulias ("Gianulias") was a California real estate developer who developed dozens of commercial and residential real estate projects over the last forty years.  Gianulias' business practice was to vest the title to each new development project in a separate entity, usually a limited liability company or limited partnership.

In 1968, Gianulias founded Cameo Homes, a California corporation ("Cameo"); he was its sole shareholder.  For each project he developed, Gianulias would install Cameo as the general partner or managing member of the owner-entity, together with granting it a small ownership interest in the entity.  Gianulias would hold the remaining ownership interests and, although Cameo was usually designated as the managing entity, Gianulias controlled each project.

One such project was a proposed multi-phase, eighty-three unit condominium project in Carlsbad, California (the "Project").  Gianulias organized Arenal Road, LLC ("Arenal Road") to develop the Project.  On September 16, 2006, Arenal Road entered into a

---

[2] The Honorable Christopher M. Klein, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

-2-

construction loan agreement with Bank Midwest which allowed it to borrow up to $60,629,568.00 for the Project, secured by a Note and Deed of Trust (the "Construction Loan") on the Project. Gianulias and Cameo both executed a single continuing guaranty agreement with Bank Midwest on September 16, 2006, for the Construction Loan. VREA purchased the Construction Loan from Bank Midwest on June 11, 2008. At the time of purchase by VREA, the Construction Loan balance was $11,754,741.98. After a default, VREA foreclosed on the Project on June 13, 2008.

Also on September 16, 2006, Arenal Road obtained a loan from Virtual for $11,590,118, secured by a Note and Deed of Trust, to purchase certain real property related to the Project (the "Land Loan"). Gianulias and Cameo also both signed a single guaranty of the Land Loan.

On June 6, 2008, three creditors (not involved in this appeal) filed separate involuntary bankruptcy petitions under chapter 7 against Gianulias and Cameo. The Gianulias bankruptcy case was assigned case number 08-13150; the Cameo case was assigned case number 08-13151. Gianulias and Cameo each eventually consented to the entry of an Order for Relief, and then requested that the cases be converted to chapter 11 on July 1, 2008. The bankruptcy court granted their motions to convert the two bankruptcy cases to chapter 11 on July 2, 2008.

On July 22, 2008, Gianulias and Cameo filed motions for orders authorizing the joint administration of the two separate bankruptcy cases. The bankruptcy court granted the motions in part on July 25, 2008, allowing joint administration of the cases, but deferring any decision regarding consolidation of the debtors'

-3-

accounts for a further hearing. After a final hearing on the motions was conducted on August 8, 2008, the bankruptcy court confirmed its order of July 25, 2008, that the cases were jointly administered, but denied the requests to consolidate the two debtors' accounts.[3]

On August 27, 2008, two different attorneys associated with Squire Sanders LLP ("Squire Sanders") filed separate pleadings entitled "Notice of Appearance and Request for Notice" in the Cameo bankruptcy case. The notices indicate that the attorneys are "an interested party"; they do not indicate that the attorneys were appearing as counsel in the bankruptcy cases for any particular parties.

On September 12, 2008, the Debtors filed and served two separate notices advising interested parties of the bar date that had been set by the bankruptcy court for filing proofs of claim in the bankruptcy cases. A proof of claim ("POC") form was attached to each notice and, while the content of the two notices was identical, the proof of claim form attached to each notice was slightly different. The POC form attached to the first-filed notice, in the space labeled "Name of Debtor," contains two check boxes, one each for Gianulias and Cameo, and in the space labeled "Case Number," the bankruptcy cases numbers for both bankruptcy cases, 08-13150 for Gianulias, and 08-13151 for Cameo, appear. The POC form attached to the later-filed notice lists only Gianulias in the space labeled "Name of Debtor" and only the case

---

[3] From this point forward in our chronology, unless otherwise necessary, we will refer to Gianulias and Cameo collectively as the "Debtors."

-4-

number for the Gianulias bankruptcy case in the space labeled "Case Number." Both notices provided that the last day to file a POC was November 11, 2008.

On November 10, 2008, VREA and Virtual each filed a POC with the bankruptcy court. VREA filed POC 38 in the amount of $12,131,120. The filed POC listed only one debtor, Gianulias, and only one of the bankruptcy case numbers, 08-13150. Attached to POC 38 was, in addition to copies of all of the Construction Loan documents, a copy of the continuing guaranty executed by both Gianulias and Cameo.

Virtual filed POC 39 in the amount of $12,981,470.94. That POC also lists only one debtor, Gianulias, and one case number, 08-13150. A copy of the guaranty of payment of the Land Loan signed by both Gianulias and Cameo was attached to POC 39.

Both POCs were signed by Squire Sanders attorneys, and listed the law firm's address. Neither of the POCs utilized the form POCs attached to the notices.[4]

Debtors had filed a motion to substantively consolidate the two bankruptcy cases on November 7, 2008. Among the factors

---

[4] The POC forms filed by Virtual and VREA through counsel were different in format from either of the two forms sent by Debtors to them attached to the notices of bar date. The forms accompanying the notices of bar date had seventeen sections; the POCs submitted by VRE and Virtual had twenty sections. The format of the information requested by the POCs was also slightly different. The filed POCs both appear to substantially comply with, and provide the information required in, Official Form B-10. See Rule 9009 (providing that "the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate"); see also Advisory Comm. Note (1983) to Rule 9009 ("The use of Official Forms has generally been held subject to a 'rule of substantial compliance.'"). Appellees have never challenged the adequacy of the filed POCs.

-5-

identified by Debtors in the motion in favor of substantive consolidation was the challenge in dealing with the many interlocking guaranties executed by Gianulias and Cameo. The motion explained:

> A substantial number of the lenders that provided financing to the Project Level entities insisted that Cameo and Gianulias guarantee their obligations. The claims from this creditor constituency against Gianulias total approximately $135 million. These claims comprise eighty-eight percent of the total claims against his estate. . . . Since substantially all of the guarantee claims filed against Cameo's estate are co-guaranteed by Gianulias, Cameo's claims base is effectively a subset of Gianulias' claims base.
>
> The creditors who obtained guarantees from Cameo and Gianulias did not delineate what part of each claim was being guaranteed by Gianulias and what part was guaranteed by Cameo, or otherwise take any action that would suggest they relied on the separate credit or status of either entity. To the contrary, the evidence confirms that these claimants viewed Cameo's and Gianulias' assets and liabilities as a common and obligatory recovery pot, in the event of nonpayment, since they made no effort to allocate their debts between the two obligors.

Motion for Order Substantially Consolidating Chapter 11 Estate of Cameo Homes into Chapter 11 Estate of James G. Gianulias, at 6-7, November 7, 2008.

A Joint Committee of Unsecured Creditors for the two bankruptcy cases had been appointed on August 4, 2008. The Joint Committee and Debtors executed a stipulation to substantively consolidate the two bankruptcy cases, which was approved in an order entered by the bankruptcy court on December 10, 2008. Included in the order approving the stipulation was the following condition:

> Substantive consolidation of the Gianulias and Cameo estates will have no effect, either during the cases or post-confirmation, on the rights and obligations of

either estate, or of Gianulias or Cameo as debtors, to third parties with respect to any contract or agreement to which either Gianulias or Cameo is a party.

Stipulation and Order Substantively Consolidating Chapter 11 Estate of Cameo Homes into Chapter 11 Estate of James C. Gianulias, at 5, December 11, 2008.

Without objection, the bankruptcy court confirmed the Debtors' Fourth Amended Plan of Reorganization in the consolidated bankruptcy case on July 19, 2010. Under the confirmed plan, a Creditors' Trust (the "Trust") was established to oversee receipts and disbursements to unsecured creditors in Class 3 under the plan, which would include the VREA and Virtual claims if allowed. Class 3 provided that those claims in the substantively consolidated case would be paid either in full, or pro rata with all other unsecured claims, whichever amount was less. The Trust was responsible for objecting to unsecured claims by December 6, 2010, and any claims not objected to were to be deemed allowed under the plan. Payments to the unsecured creditors were originally scheduled to begin on September 12, 2012.

On December 3, 2010, the trustee for the Trust, VREA and Virtual entered into a stipulation extending the time for the Trust to file an objection to the creditors' claims through February 7, 2011. This "first" stipulation acknowledged that "[i]n the Case [VREA and Virtual] filed several claims against both Debtors." A second, third and fourth stipulation were executed to extend the time to object to these claims until, eventually, June 17, 2011. In contrast to the first stipulation, however, the second through fourth stipulations acknowledged only that "[VREA and Virtual] filed two claims."

-7-

The Trust had not objected to the VREA or Virtual claims by the expiration date provided in the Fourth Stipulation, which date was not extended. In Trustee's Third Status Report for the Gianulias Creditors Trust filed on November 29, 2011, the Trustee reported that:

> All claims objections have now been heard and adjudicated, however, there is one remaining potential open issue with respect to creditor claims. Virtual Realty Enterprises and VRE Acceptance ("VRE") filed claims in the Gianulias case only. After reviewing their claims the Trustee decided not to object. However, VRE now claims that it is entitled to claims in both the Gianulias and Cameo case. (At the time claims were filed the cases were jointly administered, not consolidated.) It is the Trustee's position that VRE is not entitled to a claim in both cases and did not seek the appropriate remedy in the [] proper time frame (prior to approval of the Plan) to allow dual claims.

Trustee's Third Status Report for the Gianulias Creditors Trust, at 12, November 29, 2011.[5]

On February 28, 2012, VREA and Virtual filed a "Motion for Determination That Their Claims Were Properly Filed." They argued in the motion that they had filed proper, formal proofs of claim as to both Gianulias and Cameo because they had complied with the Debtors' claim filing process in reliance on the second bar date notice, and the accompanying POC form, and that any failure to comply with the filing requirements resulted from confusion created by the Debtors' use of two bar date notices. Alternatively, the creditors argued that the proofs of claim that were filed in the now-consolidated bankruptcy case should be

---

[5] Trustee's Third Status Report was not included in the excerpts of record, but may be found at docket number 943 of the Gianulias bankruptcy case (08-13150). We may take judicial notice of the underlying bankruptcy records with respect to an appeal. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988).

-8-

treated and allowed as informal proofs of claim in the Cameo bankruptcy case.

The Trust responded to the motion on March 7, 2012. The Trust argued that the bar notices were not ambiguous, that VREA and Virtual had admitted receiving both notices, that the creditors' filed proofs of claim were inadequate to constitute a formal proof of claim in the Cameo case, that the creditors' request that the bankruptcy court allow informal proofs of claim in the Cameo case was a belated attempt to amend the filed claims, and that the creditors had not established that allowance of their informal claims would not prejudice other creditors.

A hearing on VREA and Virtual's motion was held on March 27, 2012. After hearing arguments of counsel, the bankruptcy court announced its ruling on the record:

> I'm going to deny the motion. These were administratively consolidated cases and bankruptcy lawyers know you have to file separate claims in each case. They were not substantively consolidated. There were two lawyers and, frankly, a proof of claim is a form that counsel can do on their own without getting it from the court. I understand your argument that some times there's different instruction, but to say that one notice filed basically at the same time as another somehow because it's later filed one you can ignore the fact that they are only administratively consolidated. I feel that is a totally inappropriate argument.

Hr'g Tr. 23:16–24:2, March 12, 2012.

The bankruptcy court entered an order denying the VREA and Virtual motion "based on the findings and conclusions as set forth on the record of the proceeding and good cause appearing therefore." Neither the oral ruling nor the bankruptcy court's order denying the motion addressed VREA and Virtual's alternative argument that they had presented an allowable informal proof of

-9-

claim in the Cameo case. The creditors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in deciding that VREA and Virtual had not filed proper formal proofs of claim in the Cameo case.

Whether the bankruptcy court erred in concluding that VREA and Virtual's filed proofs of claim in the Gianulias case should not be treated as allowed informal proofs of claim in the Cameo case.

## STANDARDS OF REVIEW

The bankruptcy court's interpretation of the Bankruptcy Code and Rules is reviewed de novo. Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 869 (9th Cir. 2012).

Whether a valid informal proof of claim exists in a bankruptcy case is a question of law reviewed de novo. Pac. Resource Credit Union v. Fish (In re Fish), 456 B.R. 413, 417 (9th Cir. BAP 2011). De novo review requires the Panel to independently review an issue, without giving deference to the bankruptcy court's conclusions. See Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 423 (9th Cir. BAP 2011) (citing First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006)).

## DISCUSSION

VREA and Virtual argue that, on this record, they properly filed formal proofs of claim against both Gianulias and Cameo

-10-

because they complied with the process required in the bar date notices, and that any failure to list Cameo in their filed POCs resulted from confusion created by the Debtors' use of two bar date notices. In the alternative, VREA and Virtual argue that the POCs they filed in the Gianulias bankruptcy case constituted informal proofs of claim in the Cameo case.

In denying their motion, the bankruptcy court addressed the first of the VREA and Virtual arguments in its oral ruling at the March 12 hearing: "to say that one notice filed basically at the same time as another somehow because it's later filed [] you can ignore the fact that they are only administratively consolidated. I feel that is a totally inappropriate argument." The bankruptcy court did not address VREA and Virtual's informal proof of claim argument.

**I.**

**Virtual and VREA did not file formal proofs
of claim in the Cameo bankruptcy case.**

Under § 501, a creditor may file a proof of claim. Section 502(a) provides that "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest . . . objects." Rule 3001(a) requires that all proofs of claim be in writing and conform substantially to the Official Form. And Rule 3001(f) further provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." In chapter 11 cases, Rule 3003(c)(2), consistent with § 1111(a), requires a creditor to file the proof of claim if its claim is either not scheduled by the debtor, or is scheduled as contingent,

-11-

unliquidated or disputed.  Here, it is undisputed that Cameo's schedules list the claims of both VREA for the Construction Loan, and Virtual for the Land Loan, as debts that are undisputed, but contingent and unliquidated.[6]  Consequently, under the Code and Rules, both VREA and Virtual were required to file a proof of claim in the Cameo bankruptcy case.

When a bankruptcy court orders that two or more bankruptcy cases be jointly administered, it has no effect on the rights and obligations of debtors and creditors in those cases:

> Joint administration is thus a procedural tool permitting use of a single docket for administrative matters, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ministerial matters that may aid in expediting the cases. Rule 1015, Advisory Committee Note (1983).  Used as a matter of convenience and cost saving, it does not create substantive rights.

Reider v. FDIC (In re Reider), 31 F.3d 1102, 1109 (11th Cir. 1994).  See also Bunker v. Peyton (In re Bunker), 312 F.3d 145, 153 (4th Cir. 2002) ("Under joint administration the estate of each debtor remains separate and distinct . . . .  Joint administration does not affect the substantive rights of either the debtor or his or her creditors."); Unsecured Creditors Comm. v. Leavitt Structural Tubing Co., 55 B.R. 710, 712 (N.D. Ill. 1985) (joint administration is merely a matter of convenience and cost saving; it does not create substantive rights); In re Estrada, 224 B.R. 132, 135 (Bankr. S.D. Cal. 1998)(until substantively consolidated, jointly administered estates are

---

[6]  We take judicial notice of the schedules filed by Gianulias in bankruptcy 08-13150 and Cameo Homes in bankruptcy 08-13151. In re E.R. Fegert, Inc., 887 F.2d at 957-58.

-12-

separate).

In a joint administration, the claims of creditors in one case are treated separately from claims in the other cases.

> The purpose of joint administration is to make case administration easier and less expensive than in separate cases, without affecting the substantive rights of creditors (including inter-debtor claims). There is no merging of assets and liabilities of the debtors, and inter-entity claims survive. <u>Creditors of each debtor continue to look to that debtor for payment of their claims.</u>

<u>Gill v. Sierra Pac. Construction, Inc. (In re Parkway Calabasas, Ltd.)</u>, 89 B.R. 832, 836 (Bankr. C.D. Cal. 1988), <u>aff'd</u>, 949 F.2d 1058 (9th Cir. 1991) (emphasis added).

On November 10, 2008, when VREA and Virtual filed the POCs listing Gianulias as the debtor, and bearing only the Gianulias bankruptcy case number, the Gianulias and Cameo bankruptcy cases were being jointly administered, but the bankruptcy cases had not yet been substantively consolidated. As a result, at that time, VREA and Virtual were not absolved of their obligation under the Bankruptcy Code and Rules that, if they wished to assert a claim in the Cameo bankruptcy case, they must file a proof of claim in that case. As explained by the bankruptcy court in this appeal, "These were administratively consolidated cases and bankruptcy lawyers know you have to file separate claims in each case."

The bankruptcy court's ruling is consistent with case law. The First Circuit considered a comparable situation in <u>Liakas v. Creditors' Comm. of Deja Vu, Inc.</u>, 780 F.2d 176 (1st Cir. 1986). There, the bankruptcy cases of related debtors Harbor House and Deja Vu, Inc. were being jointly administered, but had not been substantively consolidated. 780 F.2d at 176. A creditor, Liakas,

-13-

filed a proof of claim that listed only Harbor House as the debtor. Liakas argued that because the debt was owed by both Harbor House and Deja Vu, the filing of its proof of claim in Harbor House was also sufficient to establish its claim in Deja Vu. The First Circuit disagreed:

> There is no indication that the estates of Harbor House and Deja Vu were being administered as one estate during the bankruptcy proceedings. . . . The proof of claim that Liakas filed in the Harbor House proceedings cannot be construed as a claim against Deja Vu, as it did not refer in any way to Deja Vu as a debtor.

Id. at 179. For support, the court cited to an earlier decision of the Second Circuit decided under the Bankruptcy Act. In re Chemo Puro Mfg. Corp., 213 F. Supp. 845 (S.D.N.Y. 1962), aff'd and adopted as circuit policy sub nom. Arthur Andersen & Co. v. Vincent, 313 F.2d 631 (2d Cir. 1963)(per curiam) (holding that a proof of claim filed in one bankruptcy case against a corporation could not be deemed to have been filed in a bankruptcy case involving a subsidiary of the corporation). See also Ne. Office & Commercial Properties v. Smith Valve Corp. (In re Ne. Office & Commercial Properties, Inc.), 178 B.R. 915 (Bankr. D. Mass 1995) (holding that a proof of claim filed in one case has no effect as a claim filed in another case. "To be effective, a claim against the debtor must appear of record in the debtor's case.").

VRE and Virtual have cited no authority for the proposition that, in two jointly administered cases, a proof of claim filed in one case should be treated as a formal proof of claim in the other case. To the contrary, under the applicable provisions of the Code and Rules, we conclude that the bankruptcy court did not err

-14-

in not treating the Virtual and VREA POCs filed in the Gianulias case as formal proofs of claim in the Cameo case.

Instead of citing to the Code or Rules, Virtual and VREA argue on equitable grounds that their claims should be allowed in the Cameo case. They claim confusion was created by their attorneys' receipt of the two bar date notices and accompanying POC forms and allege inequitable conduct by the Trustee.

At oral argument before the Panel, counsel for VREA and Virtual urged us to review the declaration of Patrick J. Fields, a colleague at Squire Sanders who was involved in casting ballots for the Gianulias plan of reorganization and the negotiation of the four stipulations to extend the time for the Trust to object to claims.

As to the balloting on the plan, Fields declared: "The ballots did not allow a creditor to specify that it had a claim against one, but not the other debtor, but if it had done so, VREA and Virtual would have specifically indicated it had claims against both Debtors." Fields' Dec. at ¶ 3. We take this as an admission that VREA and Virtual did not "specifically indicate[] that [they] had claims against both debtors" in the balloting on the Gianulias plan of reorganization.[7]

---

[7] There is a continuing dispute among the parties regarding the effect of confirmation of the plan on filing of claims. Article VII-F of the plan conferred on the Trust the authority and responsibility for objecting to the unsecured claims. The deadline for objecting to claims was December 6, 2010. The First Stipulation was executed on December 3, 2010, in advance of the deadline, and each of the four Stipulations was approved by the bankruptcy court. Therefore there was no inconsistency between the plan and the extensions of time to object. If we consider the alternative argument that there never was an objection to the claim filed, and under the Code, the Rules and the plan, an

(continued...)

-15-

As to the four stipulations, Fields declared that he signed the First Stipulation on behalf of VREA and Virtual, which included the statement, "In the case VRE filed several claims against both Debtors." Fields Dec. at ¶ 10. But in reviewing the proposed Second Stipulation, Fields declared "I noted to Ms. Miller [Trust counsel] that the language in the draft had been modified to state that VRE filed claims against Gianulias. <u>After some negotiation on that point</u>, the draft stipulation was modified to state: 'In the case, VRE filed two claims.'" Fields Dec. at ¶ 11 (emphasis added). Fields signed the Second, Third and Fourth Stipulations, all of which contained the statement that VRE filed two claims. Fields Dec. at ¶ 12. The declaration clearly indicates that the issue of the number of claims was specifically subject to a continuing negotiation between VREA and Virtual and the Trust. Consequently, we find that the Fields Declaration does not support VREA and Virtual's argument that the Trust acted inequitably in delaying its decision that claims were not filed in the Cameo case.

We find the creditors' equitable arguments unpersuasive. As noted, the Code and Rules prescribe the procedure for filing appropriate proofs of claim in bankruptcy cases, and that procedure cannot be varied by the provisions of a debtor's notice advising of the bar date. Moreover, our review of the bar date notices (which we find identical in content) allows no room for

---

[7](...continued)
unchallenged claim is deemed allowed, we have concluded for the reasons stated in this section that there never were formal claims filed in the Cameo case and thus not deemed allowed under either the plan or the Code and Rules.

-16-

any confusion that creditors must file proofs of claim in both bankruptcy cases to share in distributions. That one of the form POCs listed only one debtor and one bankruptcy case number does not change that.

In addition, the allegedly inequitable conduct of Trustee is of no moment, since even if the Trustee wavered or delayed in deciding whether to contest the status of the VREA and Virtual claims in the Cameo case, all of his actions, including his execution of the stipulations, occurred long after the bar date for filing timely proofs of claim had expired. Equity affords no remedy to VREA and Virtual under these facts.

**II.**

**The VRE and Virtual Proofs of Claim filed in the Gianulias Case Constituted Informal Proofs of Claim in the Cameo case.**

VREA and Virtual alternatively argue that their filings of the POCs in the Gianulias bankruptcy case were sufficient to constitute informal proofs of claim in the Cameo bankruptcy case. The bankruptcy court did not discuss this argument at all in its oral decision nor in the order. However, based upon our de novo review of the record, we conclude that, under the Ninth Circuit's liberal standard, the POCs submitted by VREA and Virtual in the Gianulias bankruptcy case meet the requirements for allowance of informal proofs of claim in the Cameo bankruptcy case.

The informal proof of claim doctrine has been long recognized in the Ninth Circuit. Pac. Res. Credit Union v. Fish (In re Fish), 456 B.R. 413, 417 (9th Cir. BAP 2011). Simply stated, "for a document to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim

-17-

against the estate, and evidence an intent to hold the debtor liable." 931 F.2d at 622 (quoting In re Sambo's Restaurants, Inc., 754 F.2d 811, 815 (9th Cir. 1985)). This doctrine is an extension of the "so-called rule of liberality in amendments to creditors' proofs of claim so that the formal claim relates back to previously filed informal claim." In re Holm, 931 F.2d at 622 (quoting In re Anderson-Walker Indus., Inc., 798 F.2d 1285, 1287 (9th Cir. 1986). As the Ninth Circuit has observed:

> The reason for this "liberal" rule is elemental. Bankruptcy courts are courts of equity, and must assure "that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 308 U.S. 295, 305, 84 L. Ed. 281, 60 S. Ct. 238 (1939); In re International Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir. 1985). The "liberal" rule reflects our preference for resolution on the merits, as against strict adherence to formalities.

In re Anderson-Walker Indus., Inc., 798 F.2d at 1286.

Applying this historically liberal standard, a variety of types of documents and pleadings submitted by creditors in bankruptcy cases have been recognized as adequate to constitute an informal proof of claim in a bankruptcy case. See Wright v. Holm (In re Holm), 931 F.2d at 622-23 (a debtor's disclosure statement); Pizza of Haw., Inc. v. Shakeys, Inc. (In re Pizza of Haw., Inc., 761 F.2d 1374, 1381-82 (9th Cir. 1985) (a creditor's complaint for relief from the automatic stay with attachments); In re Sambo's Restaurants, Inc., 754 F.2d at 815-16 (a creditor's complaint removed from state court to bankruptcy court); County of Napa v. Franciscan Vineyards (In re Franciscan Vineyards), 597 F.2d 181, 182-83 (9th Cir. 1979) (a simple letter sent to a bankruptcy trustee, even though it had not been filed with the

bankruptcy court); <u>Sun Basin Lumber Co. v. United States</u>, 432 F.2d 48 (9th Cir. 1970) (an objection to a trustee's motion to sell property); <u>In re Fish</u>, 456 B.R. 413 (a creditor's motions for relief from the automatic stay).

This Panel has summarized the elements necessary for a creditor to establish an informal proof of claim in the Ninth Circuit:

    (1) presentment of a writing;
    (2) within the time for the filing of claims;
    (3) by or on behalf of the creditor;
    (4) bringing to the attention of the court;
    (5) the nature and amount of a claim asserted against
    the estate.

<u>In re Fish</u>, 456 B.R. at 417 (quoting <u>Dicker v. Dye (In re Edelman)</u>, 237 B.R. at 150). As noted in <u>Edelman</u>,

    [T]here must have been presented, within the time limit, by or on behalf of the creditor, some written instrument which brings to the attention of the court the nature and amount of the claim. <u>Perry v. Certificate Holders of Thrift Savings</u>, 320 F.2d 584, 590 (9th Cir. 1963).

<u>In re Edelman</u>, 237 B.R. at 153.

Under this case law, VREA and Virtual argue that the POCs they filed in the Gianulias bankruptcy case satisfy the requirements for an informal proof of claim in the Cameo case. We agree.

POCs 38 and 39 were unquestionably writings filed by creditors Virtual and VREA in the bankruptcy court on November 10, 2008, one day before the bar date of November 11, 2008, for claims in the jointly administered cases. The case law emphasizes that in determining adequacy of an alleged informal proof, the critical inquiry is whether the subject documents focus attention on the nature and amount of the creditor's claim. In other words,

whether to allow an informal proof of claim is not determined so much by the form or type of document, but instead by an examination of its contents and the creditor's conduct. In re Fish, 456 B.R. at 417-18.

For example, in the In re Holm case, the court held that a disclosure statement and plan submitted by a creditor evidenced the intent of the creditor to hold the debtor liable for a debt. Similarly, in In re Pizza of Haw., Inc., a request for relief from the automatic stay stated that the creditor intended to join the debtor as a defendant in a civil suit, and the court found that was evidence of intent to hold the debtor's estate liable.

In the discussion above concerning formal proofs of claim, the bankruptcy court correctly noted that, because the VREA and Virtual POCs listed only Gianulias and his case number, they could not constitute formal proofs of claim in the Cameo bankruptcy case. But in analyzing the adequacy of alleged informal proofs of claim, our task is not to examine the form of the document that is filed with the bankruptcy court, but to instead look to its content to determine the intent of the creditor. Here, the POCs submitted by VREA and Virtual were timely filed writings which clearly bring to the attention of the Debtors and the bankruptcy court the nature and amount of VREA and Virtual's claims against not only Gianulias, but also against Cameo. Indeed, the POCs not only include the relevant information on the face of the POCs, the attachments establish that the creditors' debts are founded upon the same loan documents, and most importantly, the same guaranty executed by both Gianulias and Cameo. Fairly read, the POCs manifest the intent of VREA and Virtual to hold not only

-20-

Gianulias, but also Cameo, liable under the terms of the guaranties. In fact, looking to the substance of what was filed, the only information lacking on the filed POCs is Cameo's name and bankruptcy case number. On this record, it is of no consequence that the POCs listed only Gianulias as the debtor, and only the Gianulias case number, because case law on informal proofs of claim instructs us to look beyond the form of the subject document to determine the intent of the creditor.

Applying a de novo standard of review, and consistent with the Ninth Circuit command that we look to the substance and not the form of documents offered as informal proofs of claim, we conclude that the VREA and Virtual POCs filed in the Gianulias bankruptcy case constitute valid informal proofs of claim in the Cameo bankruptcy case. As a result, the bankruptcy court erred in denying the creditors' "Motion for Determination That Claims Were Properly Filed."

**CONCLUSION**

We REVERSE the order of the bankruptcy court.

Concurrence begins on next page.

-21-

KLEIN, Bankruptcy Judge, CONCURRING:

I join the majority decision and write separately to point out that "joint administration" is an amorphous and imprecise procedure that is intentionally flexible and that requires definition by the court that orders joint administration. Confusion is inevitable unless the court takes seriously its obligation to be specific when ordering joint administration.

Here, some of the confusion that led to this situation in which the appellants get paid only half of what other similarly situated creditors are paid is likely attributable to imprecision by the court in its order directing joint administration.

The Bankruptcy Code does not provide for joint administration. Rather, joint administration is a creature of Federal Rule of Bankruptcy Procedure 1015(b), which permits the court to "order a joint administration of the estates" of certain related debtors but says next to nothing about what is meant by joint administration. Fed. R. Bankr. P. 1015(b).

The Rule 1015(b) procedure is intentionally flexible in the name of reducing expense. Thus, the advisory committee note explains:

> Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other purely administrative matters that may aid in expediting the cases and rendering the process less costly.

Fed. R. Bankr. P. 1015(b), Advisory Committee Note (1983).

Rule 1015(b) provides that, "[p]rior to entering an order the court shall give consideration to protecting creditors of

-1-

different estates against potential conflicts of interest." Fed. R. Bankr. P. 1015(b) (second sentence). This, in view of the flexibility described in the advisory committee note, operates as a direction to the court to be careful and precise about what is being ordered.

In addition, Rule 2009 permits, but does not require, a single trustee in jointly administered cases unless creditors or equity security holders would be prejudiced by conflicts of interest of a common trustee. Fed. R. Bankr. P. 2009(d).

The only mandatory requirement for a joint administration is that there be separate accounts. Rule 2009(e) is the sole specific direction for jointly administered cases:

> (e) Separate Accounts. The trustee or trustees of estates being jointly administered shall keep separate accounts of the property and distribution of each estate.

Fed. R. Bankr. P. 2009(e).

Everything else about the details of a particular joint administration is left to the discretion of the court.

If the court had been meticulous about clarifying the details of this particular joint administration, then the confusion leading to this appeal might have been obviated.

Accordingly, our application of the "informal proof of claim" doctrine is an appropriate corrective measure.